# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>OMAR GUTIERREZ-RAMIREZ,<br>Defendant. | Case No. 18-cr-00422-BLF-1<br><br>**ORDER GRANTING MOTION TO DISMISS THE INDICTMENT**<br><br>[Re: ECF 25] |

Before the Court is Defendant Omar Gutierrez-Ramirez's motion to dismiss the indictment for illegal reentry after deportation in violation of 8 U.S.C. § 1326. Mot., ECF 25. Defendant contends that the immigration judge who issued his underlying removal order did not have jurisdiction to issue such an order because the Notice to Appear for his removal proceedings was invalid. *See generally* Mot; Reply, ECF 32. For the following reasons, the Court holds that the immigration court did not have jurisdiction to issue the original removal order, and thus Defendant's motion to dismiss is GRANTED.

## I. BACKGROUND

On January 22, 2002, the Immigration and Naturalization Service ("INS") served on Defendant a "Notice to Appear" for his removal proceedings under 8 U.S.C. § 1229. Decl. of Courtney Norris ISO Opp., Ex. A ("NOA").[1] Defendant was in INS custody in Solano, California when he was personally served with the Notice to Appear. *See id.* at 2. The Notice to Appear listed the date and time of the proceedings as "a date to be set" and "a time to be set," respectively. *Id.* at 1. In the space for the "complete address of the immigration court, including room number,

---

[1] Pursuant to Federal Rule of Evidence 201, the Court is permitted to take judicial notice of adjudicative facts "not subject to reasonable dispute," and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

if any," the Notice states that the proceedings were "to be calendared and notice provided by the Executive Office of Immigration Review." *Id.* (capitalization altered). The Notice did not include the address of the Immigration Court where INS planned to file the Notice. On the Notice, Defendant signed a section entitled "Request for Prompt Hearing," which stated that "[t]o expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing before an immigration judge." *Id.* at 2. The Notice states that Defendant was given "[a] list of providers of free legal services" and "was provided oral notice in the Espanol/English language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act." *Id.*

On January 23, 2002, Defendant was transferred to the INS detention facility in Eloy, Arizona, which meant that his hearing "would be heard under the Phoenix Executive Office of Immigration Review jurisdiction." Norris Decl. at 2. On January 24, 2002, the Immigration Court prepared a "Notice of Hearing in Removal Proceedings," which stated that the "master hearing" in Defendant's case would be held on January 29, 2002, listed the address for the hearing, and listed the address for the Immigration Court. Mot., Ex. B ("NOH"), ECF 25-2; Norris Decl. at 2. The Notice of Hearing stated that the document was served by personal service to "alien c/o Custodian Officer." *Id.*

Defendant's final hearing was held on February 20, 2002. Norris Decl. at 3. Defendant was unrepresented at the hearing. Norris Decl. at 2. At the hearing, the Immigration Judge denied Defendant's request for voluntary departure and ordered Defendant removed to Mexico. Mot., Ex. D, ECF 25-4; *see* Mot., Ex. C, Tape 3 at 13:20–37, ECF 25-3. The Immigration Judge told Defendant "[t]here is no appeal from this decision." Mot., Ex. C, Tape 3 at 13:33–37. The final order of the immigration indicated that the appeal was "waived." Mot., Ex. D.

Defendant was subsequently deported from the United States. *See* Indict., ECF 15. The removal was reinstated in July 2018. *See* Mot., Ex. H, ECF 25-8. The Indictment in this case was filed on September 6, 2018, charging Defendant with one count of violation of 8 U.S.C. § 1326 for illegal reentry of a removed alien. *See* Indict. Defendant filed the instant motion to dismiss the Indictment on March 26, 2019, and the Court held a hearing on July 16, 2019. ECF 38.

## II. LEGAL STANDARD

The Federal Rules of Criminal Procedure state that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R.Crim. P. 12(b)(1). Rule 12(b)(3) pertains to alleged defects in the indictment and permits a motion to dismiss for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(v).

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id*. (internal quotation marks and citation omitted). That right is codified at 8 U.S.C. § 1326(d). *See United States v. Cisneros-Rodriguez*, 813 F.3d 748, 755 (9th Cir. 2015).

To mount a successful challenge to an indictment under Section 1326, a defendant must satisfy 8 U.S.C. § 1326(d), which sets forth three requirements for collaterally attacking the underlying deportation order in a Section 1326 case. Under this section, the defendant must show that (1) he has exhausted administrative remedies to appeal his removal order; (2) he was deprived of the opportunity for judicial review; and (3) the entry of the removal order was fundamentally unfair. *See Raya-Vaca*, 771 F.3d at 1201 (citing 8 U.S.C. § 1326(d)). To show fundamental unfairness, a defendant must establish both that the deportation proceeding violated his due process rights and that the violation was prejudicial. *Id.* If the defendant satisfies the fundamental fairness requirement under § 1326(d), then he satisfies the other two requirements as well. *See Cisneros-Rodriguez*, 813 F.3d at 756; *see also United States v. Gomez*, 757 F.3d 885, 892 (9th Cir. 2014) (noting that "[a] defendant can establish the first two prongs of § 1326(d) by showing that he was denied judicial review of his removal proceeding in violation of due process").

## III. DISCUSSION

The Court first describes the relevant statutory and regulatory framework governing removal proceedings, the immigration court's jurisdiction, and notices to appear, as well as the

Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018) and the Ninth Circuit's recent decision in *Karingithi v. Whitaker*, 913 F.3d 1158 (2019). The Court then turns to Defendant's arguments here.

**A. Statutory and Regulatory Framework, *Pereira*, and *Karingithi***

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, provides the statutory framework for the initiation of removal proceedings. The INA confers upon the Attorney General the authority to define, by regulation, the jurisdiction of the immigration courts. *Id.* § 1103(g)(2) ("The Attorney General shall establish such regulations . . . as the Attorney General determines to be necessary for carrying out this section."). Pursuant to this authority, the Attorney General promulgated regulations governing the "jurisdiction and commencement of proceedings" in the immigration court. 8 C.F.R. § 1003.14. Under those regulations, "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." *Id.* A "charging document" includes "a Notice to Appear" as well as "a Notice of Referral to Immigration Judge[] and a Notice of Intention to Rescind and Request for Hearing by Alien." *Id.* § 1003.13.

Elsewhere, the regulations enumerate the necessary contents of the Notice to Appear for removal proceedings. *Id.* § 1003.15(b)–(c). Under Section 1003.15(b), the "Notice to Appear must . . . include" certain information about the removal proceedings, including, among other things, "[t]he address of the Immigration Court where the Service will file the . . . Notice to Appear." Under Section 1003.15(c), the Notice to Appear must include certain information about the noncitizen[2], such as the noncitizen's name and address, and states that "[f]ailure to provide any of these items shall not be construed as affording the alien any substantive or procedural rights." Importantly, neither section enumerating the requirements of the Notice to Appear includes the time and place of the initial removal hearing. Though, in another section, the regulations state that "the Service shall provide in the Notice to Appear, the time, place and date of the initial removal

---

[2] Like the Court in *Pereira*, this Court uses the term "noncitizen" throughout this opinion to refer to any person who is not a citizen or national of the United States. 138 S. Ct. at 2110 n.1 (citing 8 U.S.C. § 1101(a)(3)).

4

hearing, where practicable." *Id.* § 1003.18.

The INA itself also defines a Notice to Appear. Section 1229(a) of the INA provides that "[i]n removal proceedings under Section 1229a of this title, written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien . . . ." 8 U.S.C. § 1229(a). Like the regulations, the statute enumerates certain information that must be included in a Notice to Appear. Unlike the regulatory definition, the statutory Notice to Appear must include "the time and place at which the proceedings will be held." *Id.* § 1229(a)(1)(G)(i).

The Supreme Court recently considered and interpreted Section 1229(a)'s requirements for a Notice to Appear in *Pereira*, 138 S. Ct. 2105. In *Pereira*, the Government had served the noncitizen with a notice to appear that did not specify the time and place of the removal proceedings, as required by Section 1229(a). *Id.* at 2109. The question before the Court was whether the notice to appear triggered what is known as the "stop-time rule." Under the INA, nonpermanent residents who have been in the United States continuously for 10 years may receive discretionary relief in removal proceedings. 8 U.S.C. § 1229(b)(1). However, the stop-time rule mandates that any period of continuous presence is "deemed to end . . . when the alien is served a notice to appear under section 1229(a)." 8 U.S.C. § 1229b(d)(1)(A). Pereira argued that the stop-time rule had not been triggered because his notice to appear did not comply with the definition set forth in Section 1229(a), which required inclusion of the date and time of his proceedings.

The Supreme Court agreed, holding that "when the term 'notice to appear' is used elsewhere in the statutory section . . . it carries with it the substantive time-and-place criteria required by § 1229(a)." *Pereira*, 138 S. Ct. at 2116. The Court held that the stop-time statute clearly and unambiguously required that the notice to appear conform with the requirements of Section 1229(a) because it "expressly referenc[ed] § 1229(a)." *Id.* at 2114 (quoting 8 U.S.C. § 1229b(d)(1)). The Supreme Court also looked to other provisions of Section 1229 in interpreting the requirements under Section 1229(a) by referencing the well-established rule that "identical words used in different parts of the same act are intended to have the same meaning." *Id.* at 2114–15 (quoting *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 571 (2012)). Finally, the Court noted that "common sense" dictated the result because "[c]onveying such time-and-place

5

information to a noncitizen is an essential function of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings." *Id.* at 2115.

The Ninth Circuit recently elucidated the relationship between the regulatory notice to appear, the statutory notice to appear, and the Supreme Court's holding in *Pereira*. In *Karingithi*, the Ninth Circuit held that a notice to appear that "satisfie[s] the regulatory requirements" vests the Immigration Judge with jurisdiction, even if the notice to appear does not satisfy the statutory requirement that the notice include the time and date of remove proceedings. 913 F.3d at 1159. In so holding, the Ninth Circuit first recognized that "the regulations, not [the statute], define when jurisdiction vests," *id.* at 1160, noting that the question of "whether the Immigration Court has jurisdiction over removal proceedings . . . is governed by federal immigration regulations, which provide that jurisdiction vests in the Immigration Court when a charging document, such as a notice to appear, is filed," *id.* at 1158 (citing 8 C.F.R. §§ 1003.13, 1003.14). Thus, "[t]he regulatory definition [of Notice to Appear] . . . governs the Immigration Court's jurisdiction." *Id.* at 1160; *see also Deocampo v. Barr*, 766 F. App'x 555, 557 (9th Cir. 2019) (" . . . 8 C.F.R. § 1003.15(b) details the specific information than an NTA must contain in order to properly vest jurisdiction in the IJ."). Because "Karingithi's notice to appear met the regulatory requirements . . . [it] vested jurisdiction in the [Immigration Judge]." *Id.* The Ninth Circuit then went on to distinguish *Pereira*, holding that *Pereira* "has no application here." *Id.* at 1161.

### B. Application of Law

Defendant challenges his initial removal by arguing that the Immigration Judge who issued his removal order lacked jurisdiction to enter the removal order because Defendant's Notice to Appear did not include certain necessary information. *See generally* Mot.; Reply. This challenge is based on two distinct arguments. First, he argues that his Notice to Appear did not meet the statutory requirements set forth in 8 U.S.C § 1229(a)(1) because it did not include "[t]he time and place at which the proceedings will be held." This argument relies primarily on *Pereira* and

attempts to refute *Karingithi*'s holding. Second, in reply,[3] he argues that his Notice to Appear did not meet the regulatory requirements set forth in 8 C.F.R. § 1003.15(b) because it did not include "the address of the Immigration Court where the Service will file the . . . Notice to Appear." Reply at 7–9. Based on these two arguments and the relevant facts, Defendant argues that he satisfies 8 U.S.C. § 1326(d)'s three requirements.

The Court discusses each piece of these arguments in turn.

### 1. Defendant's Notice to Appear Did Not Vest the Immigration Judge with Jurisdiction

As Defendant essentially concedes, *Karingithi* dictates that this Court reject Defendant's first argument. *Karingithi* expressly held that a notice to appear need not include the time and place of the hearing to vest the immigration court with jurisdiction. *See* 913 F.3d at 1160–62. In so doing, it expressly rejected the same arguments Defendant makes here regarding *Pereira*. *See id.* at 1161–62. And though Defendant raises certain arguments regarding *Auer* deference that the Ninth Circuit panel in *Karingithi* did not address, the *Karingithi* petitioner raised those arguments in her petition for *en banc* review, and the Ninth Circuit denied the *en banc* petition. *See Karingithi v. Barr*, No. 16-70885, Dkt. No. 80-1, at 10, 18–19 (Apr. 15, 2019); *id.*, Dkt. No. 87 (denying *en banc* review). Because this Court is bound by (and agrees with[4]) the Ninth Circuit's holding in *Karingithi*, it rejects Defendant's first argument.[5]

By contrast, the Court agrees with Defendant's second argument: the Immigration Judge did not have jurisdiction to remove Defendant because the Notice to Appear did not include "the address of the Immigration Court where the Service [would] file the . . . Notice to Appear." 8

---

[3] The Court provided the Government the opportunity to file a sur-reply to address this argument, which the Government filed on July 9, 2019. Sur-Reply, ECF 37.
[4] *See United States v. Garcia-Gonzalez*, No. 15-CR-00109-BLF-1, 2019 WL 343473, at *1 (N.D. Cal. Jan. 28, 2019).
[5] Though the Government does not raise the issue, the Court notes that the Notice to Appear states that Defendant "was provided oral notice . . . of the time and place of his or her hearing." NOA. This representation is not believable given that the NOA itself says the hearing time and place is "to be set," and that the Government's declaration makes clear that Defendant was in California when served with the Notice and then was moved to Arizona where his hearing was held, at which time he was served with the Notice of Hearing. *See* Norris Decl. at 2. This evidence further indicates that INS had not yet decided the time and place of Defendant's hearing when it served him with the Notice to Appear. Moreover, this representation does not indicate that Defendant was informed of the address of the Immigration Court in which the Notice would be filed.

7

C.F.R. § 1003.15. *Karingithi* instructs the Court to look to the regulations to determine when jurisdiction vests. 913 F.3d at 1159–60. Under 8 U.S.C. § 1003.14, "[j]urisdiction vests . . . when a charging document is filed." Under Section 1003.13, a "charging document" is defined, in part, as a "Notice to Appear." And under Section 1003.15, a "notice to appear" "must . . . include" the information set forth in Section 1003.15(b), which includes the "address of the Immigration Court." Based on this straightforward reading of the regulations, a Notice to Appear that lacks the address of the Immigration Court is not a "notice to appear" that can serve as a charging document to vest jurisdiction. That is, a notice to appear that lacks the address of the Immigration Court does not "satisf[y] the regulatory requirements," *Karingithi*, 913 F.3d at 1159, and cannot vest the Immigration Court with jurisdiction. Other courts in this Circuit have reached the same conclusion, and this Court finds their reasoning persuasive. *See, e.g.*, *U.S.A. v. Martinez-Aguilar*, No. 5:18-CR-00300-SVW, 2019 WL 2562655, at \*3–\*6 (C.D. Cal. June 13, 2019); *United States v. Ramos-Urias* (*Ramos-Urias II*), No. 18-CR-00076-JSW-1, 2019 WL 1567526, at \*3 (N.D. Cal. Apr. 8, 2019).

The Court also recognizes, however, that several courts in this district have rejected this argument. *See United States of America v. Arteaga-Centeno*, No. 18-CR-00332-CRB-1, 2019 WL 3207849, at \*5 (N.D. Cal. July 16, 2019)[6]; *USA v. Mendoza*, No. 18-CR-00282-HSG-1, 2019 WL 1586774, at \*2–\*4 (N.D. Cal. Apr. 12, 2019). The Court respectfully disagrees with those conclusions. In *Mendoza*, the court rejected this argument by equating the "place . . . of the initial removal hearing," which the Notice to Appear need only include "where practicable," 8 C.F.R. § 1003.18, with the "address of the Immigration Court where the Service will file the . . . Notice to Appear," which the Notice to Appear "must . . . include," 8 C.F.R. § 1003.15(b). *See Mendoza*, 2019 WL 1586774, at \*3. This Court reads those two locations as unique, independent requirements. The location of the initial removal hearing need not necessarily be the address where the Immigration Court is located. *Karingithi* supports this reading, by distinguishing the requirements of Section 1003.15(b) from those in Section 1003.18, stating that Section 1003.15(b)

---

[6] This opinion issued on the day the Court heard the present motion.

8

"does not require the time and date of proceedings to appear in the initial notice." 913 F.3d at 1160; *see also Deocampo v. Barr*, 766 F. App'x 555, 557 & n.3 (9th Cir. 2019) (extending this distinction to the "place" of initial removal hearing requirements).

In *Arteaga-Centeno*, the Government argued that the regulations' jurisdictional requirements are set forth in Section 1003.14 only, meaning that the requirements set forth in Section 1003.15 are non-jurisdictional. *See* 2019 WL 3207849, at *7. The court agreed based on its reading of *Karingithi* and the Ninth Circuit's previous decision in *Kohli v. Gonzales*, 473 F.3d 1061, 1066 (9th Cir. 2007). *See* 2019 WL 3207849, at *7. In *Kohli*, the Ninth Circuit determined that the immigration court had jurisdiction over the defendant's removal proceedings even though "the name and title of the issuing officer were not legible on the Notice to Appear." *Id.* at 1063. Kohli had argued that "8 C.F.R. § 299.1 directs that the NTA must use Form I-862," and Form I-862 required the signature and title of the issuing immigration officer. *Id.* at 1065. In holding that this defect did not deprive the Immigration Judge of jurisdiction, the Ninth Circuit noted,

> [T]he issuance of a NTA pursuant to 8 C.F.R. § 239.1(a) does not create jurisdiction in the Immigration Court. Rather, jurisdiction vests in the Immigration Court "when a charging document is filed" with the Immigration Court. 8 C.F.R. § 1003.14. *See also* 8 C.F.R. § 1239.1(a). Section 1003.14 requires a certificate showing service, but does not suggest that there are any other jurisdictional requirements.

*Id.* at 1066. The *Arteaga-Centeno* court read this to "suggest[] that the only jurisdictional requirement for a charging document is that it show service, and that regulations other than § 1003.14 are not jurisdictional." 2019 WL 3207849, at *7.

The *Arteaga-Centeno* court believed that this suggestion in *Kohli* might be read to conflict with *Karingithi*, which "can be read to suggest that an NTA must include the information set out in § 1003.15(b)." *Id.* (quoting *Karingithi*, 913 F.3d at 1160). To avoid the perceived conflict between these precedents, the *Arteaga-Centeno* court interpreted *Karingithi* to "suggest[] a distinction between the jurisdictional provisions of the regulations, *see* 8 C.F.R. §§ 1003.13–.14, and a non-jurisdictional provision, *id.* § 1003.15," because *Karingithi* cited only Sections 1003.13 and 1003.14 when it stated that the Immigration Court's jurisdiction "is governed by federal regulations." *Id.* (quoting *Karingithi*, 913 F.3d at 1158). In making this determination, Judge Breyer noted more than once that "reasonable minds may differ as to the application of the law at

9

issue here," *id.* at *1, and that the "answer is far from clear," *id.* at *5.

This Court respectfully disagrees with *Arteaga-Centeno*'s reading of both *Kohli* and *Karingithi*, and in turn the governing regulations. First, this Court does not believe that *Kohli* and *Karingithi* may be read to conflict. In rejecting the petitioner's argument in *Kohli*, the Ninth Circuit made clear that Kohli "did not contend that the government did not follow the regulations that gave the Immigration Court jurisdiction," but rather she "argue[d] that an alleged defect in the NTA," which was "issued pursuant to a separate regulation," "deprived the court of jurisdiction." 473 F.3d at 1067. That is, Kohli's argument was based not on Sections 1003.13–15, but rather on 8 C.F.R. § 239.1. Kohli had not argued that the elements for a notice to appear (*i.e.*, a "charging document") were not satisfied under the statute or the jurisdictional regulations. It was in response to this argument that the Ninth Circuit made the above statement, including that "[J]urisdiction vests in the Immigration Court 'when a charging document is filed' with the Immigration Court. Section 1003.14 requires a certificate showing service, but does not suggest that there are any other jurisdictional requirements." *Id.* at 1066 (citations omitted). The Ninth Circuit simply held that there are no requirements beyond the filing of a "charging document" (as defined in the statute or regulations) with a certificate of service in order for jurisdiction to vest. That holding is completely consistent with *Karingithi*, which addressed the different question of how the jurisdictional regulations define a notice to appear (*i.e.*, "charging document"). *See* 913 F.3d at 1160

Without the need to contort *Karingithi* to align with *Kohli*, it is clear that *Karingithi* contemplates that Section 1003.15 is jurisdictional. Indeed, *Karingithi* analyzed Section 1003.15(b)'s requirements to determine if it required "the time and date of proceedings" and thus to answer the question whether the absence of such information deprived the Immigration Judge of jurisdiction. 913 F.3d at 1160. Indeed, *Karingithi* distinguished the "regulatory definition" of the Notice to Appear set forth in Section 1003.15 from the statutory definition set forth in 8 U.S.C. § 1229(a) by stating that "[i]f the regulations did not clearly enumerate *requirements for the contents of a notice to appear for jurisdictional purposes*, we might presume they sub silentio incorporated § 1229(a)'s definition." *Id.* (emphasis added). Thus, *Karingithi* clearly contemplates that the

10

requirements in Section 1003.15 are "for jurisdictional purposes." This makes sense, given the language of the regulations themselves: Section 1003.14 vests jurisdiction with a charging document, defined in Section 1003.13 as a notice to appear, defined in Section 1003.15 as having certain requirements. The logic of the regulations is that Section 1003.15's requirements directly control jurisdiction. *Cf. Martinez-Aguilar*, 2019 WL 2562655, at \*3–\*6 (describing why failure to satisfy the requirements of Section 1003.15 strips the Immigration Court of "general jurisdiction over the particular removal case at issue" (emphasis omitted)).

Thus, the Court holds that a Notice to Appear that fails to meet the requirements of 8 C.F.R. § 1003.15(b) is not a charging document under Section 1003.13 that can vest the Immigration Judge with jurisdiction over this case under Section 1003.14. Because Defendant's Notice to Appear did not include "the address of the Immigration Court," it did not satisfy one of these enumerated criteria and thus did not vest the Immigration Judge with jurisdiction.

### 2. The Notice of Hearing Did Not Vest the Immigration Judge with Jurisdiction

The Government argues that even if the Notice to Appear is deficient, the Notice of Hearing and actual proceedings cured this deficiency, Opp. at 14–16, ECF 28, and the Notice of Appearance does not "preclude jurisdiction from vesting in the IJ," *id.* at 16–17. The Court has already rejected the latter argument above. To the extent the Government analogizes to faulty indictments failing to deprive courts of jurisdiction, the Court finds these circumstances distinguishable because the regulations here expressly require the omitted information in order for jurisdiction to vest.

The argument with respect to the Notice of Hearing fails for both factual and legal reasons. First, even if a Notice of Hearing could cure the jurisdictional defects of a Notice to Appear, there is no evidence in this case that the Notice of Hearing was ever served on Defendant. The Notice of Hearing states only that the document was served by personal service to "alien c/o Custodian Officer." *See* NOH. There is no evidence that the Custodian Officer ever actually served the Notice of Hearing on Defendant. Second, there is no evidence that the Notice of Hearing was ever filed with the Immigration Court. 8 C.F.R. § 1003.14 states that "[j]urisdiction vests . . . when a charging document is filed with the Immigration Court by the Service." Under this plain language

11

(and if the Notice of Hearing is akin to an amended charging document), the Notice of Hearing would need to be filed with the Immigration Court. Of course, this action would be somewhat strange, given that the Immigration Court issued the Notice of Hearing in the first instance, but this confusing result emphasizes the legal flaws in the Government's argument discussed next. These two factual issues render the Notice of Hearing non-curative here. Put another way, even if a properly served and filed Notice of Hearing could cure a faulty Notice to Appear, there is no evidence that Defendant's Notice of Hearing was ever served on him or that it was ever filed with the Immigration Court. Thus, this Notice of Hearing could not cure the faulty Notice to Appear in this case.

As to the legal issues, nothing in the regulations indicates that the Government can cure a non-compliant Notice to Appear by serving a non-compliant Notice of Hearing, even if the Notice of Hearing includes the information the Notice to Appear originally omitted. *See Ramos-Urias II*, 2019 WL 1567526, at *3. The Notice of Hearing did not meet the requirements of the Notice to Appear under Section 1003.15(b). The regulations do not mention a Notice of Hearing, and in no way indicate that service of a subsequent document on the noncitizen can cure the deficient charging document filed with the Immigration Court. The reasoning of the Ninth Circuit in *Lopez v. Barr*, 925 F.3d 396 (9th Cir. 2019), is instructive on this point (though admittedly only as persuasive authority). There, the Ninth Circuit considered whether a subsequent Notice of Hearing could cure a *statutorily* deficient notice to appear. The Ninth Circuit held that it could not for several reasons directly applicable to the regulations here. First, the Ninth Circuit, relying on *Pereira*, noted that the term "Notice to Appear" meant the same thing everywhere in the statute and thus incorporated the enumerated requirements everywhere in the statute. Like the statute, the regulations define the enumerated requirements of a Notice to Appear, such that "any document containing less than the full set of requirements . . . is not a Notice to Appear within the meaning of the [regulations]." *Lopez*, 925 F.3d at 400.

Second, *Lopez* noted that "[t]he phrase 'notice of hearing'—or anything resembling it—does not appear in the law." *Id.* at 401. So too here.

Third, the Ninth Circuit emphasized that the relevant provision contemplates "*a notice* to

12

appear," that is, "service of a single document—not multiple." *Id.* at 402. The regulations similarly contemplate "*a charging document*," 8 C.F.R. § 1003.14(a), and "*[t]he Notice* to Appear," 8 C.F.R. § 1003.13, 1003.15(b).

Finally, the Ninth Circuit noted that the "primary function of a [statutory] Notice to Appear is to give notice, which is essential to the removal proceeding," such that the requirements are "substantive." *Lopez*, 925 F.3d at 404. While the Court recognizes that the primary function of the regulatory Notice to Appear may be as a charging document, Section 1003.15(b) appears to "provide the [noncitizen] substantive and procedural rights" because it does not include the language disclaiming those rights that can be found in Sections 1003.15(a) and (c). *See Ramos-Urias II*, 2019 WL 1567526, at *2.

This same reasoning applies to the argument that Defendant's appearance at the proceeding cured the defect. Nothing in the regulations supports such a holding. *See United States v. Rojas Osorio*, No. 17-CR-00507-LHK, 2019 WL 235042, at *9 (N.D. Cal. Jan. 16, 2019), *vacated on other grounds sub nom. United States v. Rojas-Osorio*, 381 F. Supp. 3d 1216 (N.D. Cal. 2019) ("Defendant's appearance at the removal hearing does not satisfy the 'charging document' requirement to vest the IJ with jurisdiction.").

Thus, the Notice of Hearing did not cure the deficient Notice to Appear and did not vest the Immigration Court with jurisdiction for both factual and legal reasons.

### C. Defendant Meets the Requirements of 8 U.S.C. § 1326(d)

The Court has held that the Immigration Judge in this case did not have jurisdiction to issue the removal order. Some district courts have concluded that, where an underlying removal order is void, the noncitizen need not satisfy the three-part test laid out in § 1326(d) because there can be no collateral challenge to a removal order where there is, in effect, no removal order at all. *See, e.g.*, *United States v. Arteaga-Centeno*, 18-cr-332-CRB-1, Dkt. No. 35 (N.D. Cal. Jan. 8, 2019) (citing cases). Other courts have concluded the statutory analysis for collateral attack is necessary, regardless of the nullity of the underlying order. *See, e.g.*, *United States v. Arturo Rojas Osorio*, No. 17-cr-507-LHK, Dkt. No. 49 (N.D. Cal. Jan. 16, 2019). *Cf. Martinez-Aguilar*, 2019 WL 2562655, at *6 (holding that no showing of prejudice is required where there are

13

"jurisdictional defects in a removal order" because "the removal order itself was issued without authority and is void on its face" (citing *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 884 (9th Cir. 2003)). The Court need not decide the issue because it finds that Defendant has satisfied 8 U.S.C. § 1326(d)'s requirements.

Defendant's removal was fundamentally unfair under 8 U.S.C. § 1326(d)(3). Because the Immigration Court did not have jurisdiction to issue the removal order, Defendant's due process rights were violated. *See, e.g.*, *Ramos-Urias I*, 348 F. Supp. 3d at 1037 (finding fundamental unfairness where the immigration court did not have jurisdiction); *Rojas Osorio*, 2019 WL 235042, at *11 (same). Defendant's appearance at the hearing does not change this result because the "hearing [was] void for lack of jurisdiction and his opportunity to be heard was not a fair one." *Rojas Osorio*, 2019 WL 235042, at *11 (quoting *United States v. Lopez-Urgel*, No. 1:18-CR-310-RP, 2018 WL 5984845, *5 (W.D. Tex. Nov. 14, 2018)). Second, Defendant was prejudiced because he was "removed when he should not have been." *United States v. Aguilera-Rios*, 769 F.3d 626, 630 (9th Cir. 2014).

Because Defendant has demonstrated that his removal was fundamentally unfair, "he need not show exhaustion of administrative remedies or that he was denied judicial review pursuant to § 1326(d)(1) and (2)." *Ramos-Urias I*, 348 F. Supp. 3d at 1037 (citing cases); *Rojas Osorio*, 2019 WL 235042, at *11 (citing cases). The Court also briefly notes that the Immigration Judge told Defendant "[t]here is no appeal from this decision." Mot., Ex. C, Tape 3 at 13:33–37. Such instruction from the Immigration Judge to an unrepresented party strongly indicates that the exhaustion of administrative remedies requirement is met here. Though the final removal order states that Defendant "waived" his right to appeal, *see* Mot., Ex. D, the hearing transcript belies this representation.

As such, Defendant has shown that he is entitled to relief under Section 1326(d).

**IV. ORDER**

Because the immigration judge did not have jurisdiction to enter the original removal order against Defendant, the 2002 removal order cannot constitute a predicate for the current

14

Section 1326 charge against him for illegal reentry.[7]  Accordingly, Defendant is entitled to dismissal of the Indictment and his motion to dismiss the Indictment is GRANTED.[8]  The bond is exonerated.

**IT IS SO ORDERED.**

Dated: July 25, 2019

_____
BETH LABSON FREEMAN
United States District Judge

---

[7] Defendant's 2002 removal order was reinstated in 2018.  *See* Mot., Ex. H.  However, a "successful collateral attack on a removal order precludes reliance on a reinstatement of that same order in criminal proceedings for illegal reentry."  *United States v. Arias-Ordonez*, 597 F.3d 972, 980, 982 (9th Cir. 2010).

[8] In accord with the discussion in *Arteaga-Centeno*, this Court also is eager for guidance from the Ninth Circuit on this issue.

15